## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HECTOR BOSSIO,

        Plaintiff,

    v.

WARDEN SPAULDING, *et al.*,

        Defendants.

No. 4:20-CV-1777

(Chief Judge Brann)

### MEMORANDUM OPINION

### SEPTEMBER 9, 2021

On September 29, 2020, Plaintiff Hector Bossio, a federal inmate currently confined in the Schuylkill Federal Correctional Institution, Minersville, Pennsylvania, filed the above captioned *Bivens*[1] action, challenging the loss of his personal and legal property when he was transferred in April 2020 from the Federal Correctional Institution, Estill ("FCI-Estill"), South Carolina to the United States Penitentiary, Lewisburg, ("USP-Lewisburg"), Pennsylvania.[2]  The named Defendants are USP-Lewisburg Warden, Stephen Spaulding, and various John/Jane Doe individuals employed by the Bureau of Prisons (BOP).[3]

---

[1]  *Bivens v. Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).
[2]  Doc. 1.
[3]  *Id.*

Presently pending is Defendant Spaulding's[4] motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or for summary judgment pursuant to Federal Rule of Civil Procedure 56.[5]  For the reasons set forth below, I will grant Defendant's motion to dismiss Bossio's complaint.

## I.  STANDARDS OF REVIEW

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[6]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[7]  In addition to considering the facts alleged on the face of the complaint, the court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[8]

---

[4]   To the extent that Bossio seeks to name additional Defendants, stating that he did not have the "exact personnel's names, addresses or the capacities in which they operate in the BOP", but "reserves the right to amend his complaint when more and relevant information in obtained," (Doc. 1), John Doe defendants may only be allowed "to stand in for the alleged real parties until discovery permits the intended defendants to be installed." *Johnson v. City of Erie*, 834 F. Supp. 873, 878 (W.D. Pa. 1993) (citations omitted). Absent compelling reasons, a district court may dismiss such defendants if a plaintiff, after being granted a reasonable period of discovery, fails to identify them. *Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed, if discovery yields no identities."). Based on this Court's review of the record, although this action was filed approximately a year ago, Plaintiff has failed to provide the identities of the John Doe defendants. Thus, under the standards announced in *Scheetz*, and it appearing that Bossio has had a reasonable period of time in which to identify the John Doe Defendants and failed to do so, entry of dismissal in favor of the John Doe Defendants is now appropriate.

[5]   Doc. 18.

[6]   *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

[7]   *See Phillips v. Cty of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

[8]   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[9]  "Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.  First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.' *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  *Id*. at 679, 129 S.Ct. 1937.  *See also Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."  (citation and editorial marks omitted)).  Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'  *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937."[10]  Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[11]

---

[9]   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[10]   *Connelly v. Lane Const. Corp*., 809 F.3d 780, 787 (3d Cir. 2016) (footnote omitted).

[11]   *Iqbal*, 556 U.S. at 681.

Because Bossio proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."[12]

## II.   ALLEGATIONS IN THE COMPLAINT

Bossio states that he "and around 1000 others were emergency transferred during nationwide COVID pandemic lockdowns" to USP-Lewisburg from "FCI-Estill in South Carolina due to a tornado destroying FCI-Estill."[13]  He alleges that "because of the haste in which said inmates were transferred, the inmates had to pack their own belongings," while "BOP mandates say that officers must pack inmates' belongings, but this was an impossibility at that time."[14]  Bossio claims that "officials limited [him] to 1 duffle bag and instructed all inmates to lock their bag with their personal combination lock" and Bossio complied."[15]  Bossio "packed only BOP authorized items, like things bought at commissary and legal work/research for 2 open cases in the process of direct appeal", which Bossio claims "most of the documents are irreplaceable and without [them] he cannot litigate either of the cases nor future 2255, if the direct appeal for the criminal case is denied. [16]

---

[12]   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[13]   Doc. 1.
[14]   *Id*.
[15]   *Id*.
[16]   *Id*.

Bossio alleges that at "4 months after [his] arrival, the distribution of property is only about 5% done."[17]  He claims that even though "property is allegedly still being distributed, it is not inventoried in presence of the owner/inmate according to BOP policy" and "in fact the bags are already open with the vast majority of their property already removed."[18]  Bossio believes that "it is so overboard negligent that it can, and Bossio avers, that it has been done on purpose."[19]

Bossio states that "the above has been brought to the attention of admin/Defts. all the way up the chain of command to Def. Warden Spaulding to no avail" as "he is indifferent."[20]  He claims that "Warden Spaulding sent out a memo stating that he would follow BOP policies in the distribution of our personal property then decided to forgo those polices without notice whatever to anyone."[21]

On October 16, 2020, Bossio filed "Plaintiff's 1st Amendment to the Original Complaint" in which he states that "the above defendants have already unlawfully destroyed Bossio's personal property and legal materials without his prior consent or giving him any notice whatsoever in violation of BOP policies".[22]  Thus, Bossio concludes, that "Defendant have arbitrarily disregarded BOP policies

---

[17]  *Id.*
[18]  *Id.*
[19]  *Id.*
[20]  *Id.*
[21]  *Id.*
[22]  Doc. 8.

knowingly, arbitrarily and in bad faith to maliciously abridge/violate Bossio's 1st,

4th, 5th, 6th and 14th Amend. protections against these exact unconstitutional

actions."[23]

Bossio filed the instant action seeking the replacement of his property, an

investigator to assist in the replacement of some original documents and

photographs, free copies, and postage to replace documents already duplicated and

mailed, monetary relief in the amount of $157,000.00, and an order that his

property be inventoried, returned to him, and not destroyed.[24]

## III.   DISCUSSION

Defendant Spaulding moves to dismiss the complaint on the basis that there

is no *Bivens* remedy available for Bossio's claims.  Spaulding relies on the

Supreme Court's pronouncement in *Ziglar v. Abbasi*, 582 U.S. ——, 137 S. Ct.

1843 (2017), that "expanding the *Bivens* remedy is now a 'disfavored' judicial

activity."[25]

By way of background, in *Bivens v. Unknown Names Agents of the Federal

Bureau of Narcotics*, the Supreme Court concluded that, even absent statutory

authorization, it would enforce a damages remedy allowing individuals to be

compensated after experiencing Fourth Amendment violations of the prohibition

---

[23]   *Id.*
[24]   Doc. 1.
[25]   *Ziglar*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937).

against unreasonable searches and seizures.[26]  The Court extended *Bivens* to

include a Fifth Amendment Due Process damages remedy to an administrative

assistant claiming that a congressman discriminated against her based on gender.[27]

The Supreme Court subsequently expanded *Bivens* in 1980, concluding that the

Eighth Amendment's prohibition on cruel and unusual punishment provided a

prisoner a cause of action for damages against prison officials who failed to treat

his asthma.[28]  "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only

instances in which the Court has approved of an implied damages remedy under

the Constitution itself."[29]

    In *Ziglar*, the Supreme Court set forth a two-part test to determine whether a

*Bivens* claim may proceed.[30]  Initially, courts must determine whether the case

presents a new *Bivens* context; "[i]f the case is different in a meaningful way from

previous *Bivens* cases decided by th[e] [Supreme] Court, then the context is

new."[31]  "A case might differ in a meaningful way because of the rank of the

officers involved; the constitutional right at issue; the generality or specificity of

the official action; the extent of judicial guidance as to how an officer should

respond to the problem or emergency to be confronted; the statutory or other legal

---

[26]  *Bivens*, 403 U.S. at 397.
[27]  *Davis v. Passman*, 442 U.S. 228, 249-49 (1979).
[28]  *Carlson v. Green*, 446 U.S. 14, 19 (1980).
[29]  *Ziglar*, 137 S. Ct. at 1855.
[30]  *Id.* at 1857 (quoting *Iqbal*, 556 U.S. at 675).
[31]  *Id.* at 1859.

mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider."[32]  If the case presents a new context, a court must consider whether any alternative remedies exist.[33]  Even absent alternative remedies, a court must also consider whether special factors counsel against extending the *Bivens* remedy.[34]

In the matter *sub judice*, Bossio's claim for relief presents a new context that would extend *Bivens* liability due to the fact that the Supreme Court has never recognized a *Bivens* remedy for a Fifth Amendment[35] Due Process[36] violation for the withholding of prisoner property.[37]  Because Bossio's claim is a "new context,"

---

[32]  *Id.* at 1859-60.

[33]  *Id.*

[34]  *Id.*

[35]  To the extent Plaintiff alleges that the seizure and loss of his personal property violated the Fourth Amendment, the Third Circuit has held "that the Fourth Amendment does not apply to searches of prison cells or seizures of property within them." *Barndt v. Wenerowicz*, 698 F. App'x 673, 678 (3d Cir. 2017) (citing *Hudson v. Palmer*, 468 U.S. 517, 536 (1984) ("We hold that the Fourth Amendment has no applicability to a prison cell.")).  Accordingly, the Court will dismiss with prejudice Plaintiff's Fourth Amendment seizure claims against Defendant.

[36]  In his complaint, Plaintiff suggests that Defendant violated his Fourteenth Amendment rights by denying him his legal and personal property. Because the Fifth Amendment covers Plaintiff's claim, the "more-specific-provision" rule requires dismissal of his Fourteenth Amendment claim. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular source of government behavior, that Amendment, not the more generalized notion of substantive due process[,] must be the guide for analyzing the claims.").

[37]  *See Ziglar*, 137 S. Ct. at 1855 (articulating the only three contexts in which *Bivens* liability has been recognized*); Childress v. Palmer*, 2018 WL 4282601 (S.D. Cal. Sep. 7, 2018) (criminal defendant alleging due process violation for improper seizure of property a new *Bivens* context); *Kammeyer v. True*, 2019 WL 2616193 (S.D. Ill. June 26, 2019) (declining to create *Bivens* remedy for alleged destruction of inmate's property).

the Court must consider " 'whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.' "[38]  "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."[39]

The Court concludes that alternative processes exist to advance the personal property claim raised by Plaintiff.  First, the prison administrative grievance system is an alternative process that could be utilized to gain relief.  Additionally, this Court recently held that alternative remedies for dealing with property claims exists.  Plaintiff could seek to pursue claims under either 31 U.S.C. § 3723, which allows for small claims of up to $1,000.00 to be presented to the respective agency to redress damages caused by the negligent acts of a federal officer, or 31 U.S.C. § 3724, which allows the Attorney General to settle claims for losses of private property, among other things, caused by Department of Justice employees; this would likely include Defendants because the Bureau of Prisons ("BOP") is an agency within the Department of Justice.[40]

---

[38] *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

[39] *Ziglar*, 137 S. Ct. at 1858.

[40] *See Louis-El v. Ebbert*, 448 F.  Supp. 3d 428, 439-441 (M.D. Pa. Mar. 24, 2020) (Brann, J.); *Railey v. Ebbert*, 407 F. Supp. 3d 510, 522 (M.D. Pa. 2019) (Rambo, J.), *appeal dismissed*, No. 19-3889, 2020 WL 3414760 (3d Cir. Feb. 19, 2020); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 215 (2008).

The Court's final step of inquiry is whether " 'any special factors counsel hesitation before authorizing a new kind of federal litigation.' "[41]  This inquiry focuses on whether courts are well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.[42]  A "special factor counselling hesitation" is a factor that "cause[s] a court to hesitate before answering that question in the affirmative."[43] "The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts? The answer most often will be Congress."[44]

The Court finds that prison administration is a special factor precluding the extension of *Bivens* to Plaintiff's Fifth Amendment due process claim. "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.... Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government."[45]  "Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers

---

[41]   *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983)).
[42]   *Ziglar*, 137 S.Ct. at 1857-58.
[43]   *Id*. at 1858.
[44]   *Id.* at 1857 (quoting *Bush*, 462 U.S. at 380).
[45]   *Turner v. Safley*, 482 U.S. 78, 84–85 (1987) (internal citations and quotation marks omitted).

concerns counsel a policy of judicial restraint."[46]

"[I]n any inquiry respecting the likely or probable intent of Congress, the silence of Congress is [also] relevant."[47]  Congress has not provided a legislative remedy for prisoners alleging constitutional deprivations against federal employees in the prison administration contexts, despite providing one for prisoners as against state prison employees.[48]  Congress's silence is especially persuasive because it has enacted legislation affecting federal prisoners many times, and in each instance, has declined to include a damages remedy for constitutional violations against federal employees.[49]

Because there are alternative processes available to Plaintiff and because prison administration is already regulated by the legislative and executive branches, the Court finds that those branches should determine whether an action for damages for claims of withholding personal property in violation of the Fifth Amendment's Due Process Clause exists. Given the constraints of *Ziglar*, the

---

[46] *Id*. at 85. *See also Ziglar*, 137 S. Ct. at 1857 ("When a party seeks to assert an implied cause of action under the Constitution itself ... separation-of-powers principles are or should be central to the analysis.").

[47] *Ziglar*, 137 S.Ct. at 1862.

[48] *See* Civil Rights Act of 1871, Pub. L. No. 42−22, 17 Stat. 13 (codified in part at 42 U.S.C. § 1983).

[49] *See, e.g.*, First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5195; Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (codified in part at 28 U.S.C. § 2255); Prisoner Litigation Reform Act of 1995, Pub. L. No. 104-140, 110 Stat. 1321 (codified in part at 42 U.S.C. §§ 1997e); Crime Control Act of 1990, 104 Stat. 4789 (creating requirement that federal prisoners shall work); Act of May 27, 1930, Pub. L. No. 71-271, 46 Stat. 391 (establishing what is now known as UNICOR, which administers the federal prison workplace).

Court will not extend *Bivens* here and will grant the Defendant's motion to dismiss as it relates to Bossio's claim regarding withholding of his personal property.

Plaintiff's First Amendment claim that the destruction of his personal property has deprived his access to the courts fares no better. The Supreme Court has "never [explicitly] held that Bivens extends to First Amendment claims."[50] This Court has previously concluded that First Amendment access to the courts claims "involve different constitutional rights than have been recognized in previous *Bivens* cases [and therefore] are meaningfully different and present a 'new context.' "[51]  Likewise, other courts have concluded that *Bivens* may not be extended to First Amendment access to the courts claims.[52]  In light of this precedent, Bossio's access to the courts claim presents a new *Bivens* context.

Because Plaintiff's claim presents a new context, the Court must determine whether there are any special factors that counsel hesitation in extending *Bivens*.[53] There may be many special factors, but two are " 'particularly weighty': the availability of an alternative remedial structure and separation-of-powers

---

[50]  *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012).

[51]  *See Simmons v. Maiorana*, No. 3:16-cv-1083, 2019 WL 4410280, at *13 (M.D. Pa. Aug. 23, 2019), *report and recommendation adopted*, 2019 WL 4412296 (M.D. Pa. Sept. 13, 2019); *see also Bush v. Griffin,* No. 1:19-cv-1521, 2020 WL 5801408, at * n.3 (M.D. Pa. Sept. 29, 2020).

[52]  *See, e.g., Schwarz v. Meinberg*, 761 F. App'x 732, 733-34 (9th Cir. 2019); *Vega v. United States*, 881 F.3d 1146, 1152-53 (9th Cir. 2018); *Tate v. Harmon*, No. 7:19-cv-609, 2020 WL 7212578, at *5 (W.D. Va. Dec. 7, 2020); *Lee v. Matevousian*, No. 1:18-cv-169-GSA-PC, 2018 WL 5603593, at *3-4 (E.D. Cal. Oct. 26, 2018); *Williams v. Lynch*, No. 1:16-cv-3043-DCC, 2018 WL 4140667, at *4 (D.S.C. Aug. 30, 2018).

[53]  *See Mack v. Yost*, 968 F.3d 311, 317 (3d Cir. 2020).

concerns."[54]  This Court agrees with other courts that have concluded that federal inmates again have alternative remedies for the access to the courts claims in the form of the BOP's administrative remedies program, through the Federal Tort Claims Act ("FTCA"), or by seeking injunctive relief.[55]  Likewise, extending *Bivens* to Bossio's claim "would substantially affect government operations and unduly burden BOP officials who must defendant against this suit in their personal capacities."[56]  Moreover, "Congress's inaction and failure to provide a damages remedy, particularly where it has acted to enact sweeping reforms of prisoner litigation, suggest that an extension of a damages remedy for other types of mistreatment should not be judicially created."[57]  Courts have "afforded a level of deference to the decision making of prison officials," recognizing that "day-to-date administrative decisions have been committed solely to the province of the BOP."[58]

In sum, the Court finds that Plaintiff's First Amendment access to the courts claim presents a new context to which *Bivens* has not previously been extended. Moreover, special factors counsel against extending *Bivens* to that new context.

---

[54]   *See id.* at 320 (quoting *Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018)).

[55]   *See, e.g., Schwarz*, 761 F. App'x at 734-35; *Vega*, 881 F.3d at 1154-55; *Tate*, 2020 WL 7212578, at *6; *Lee*, 2018 WL 5603593, at *4; *Williams*, 2018 WL 4140667, at *4.

[56]   *See Schwarz*, 761 F. App'x at 735.

[57]   *See Tate*, 2020 WL 7212578, at *6.

[58]   *See Mack*, 968 F.3d at 323; *see also Railey*, 407 F. Supp. 3d at 523 (noting that "the judicial restraint exercised in cases implicating the administration of prisons is another factor weighing against extension of the *Bivens* remedy").

The Court, therefore, declines to extend *Bivens* to Bossio's access to the courts claim, and his claim will consequently be dismissed.[59]

Finally, to the extent that Plaintiff references the Sixth Amendment in his complaint, the Sixth Amendment applies only to "criminal proceedings."[60] Bossio is not subject to, and is not facing, any "criminal proceedings" in the instant action and, as such, fails to state a cognizable injury to his Sixth Amendment rights by any named Defendant. Consequently, this claim fails.

## IV.   LEAVE TO AMEND

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act] should receive leave to amend unless amendment would be inequitable or futile."[61]  I find that amendment would be futile here because Bossio cannot remedy the substantial legal deficiencies in his complaint: that *Ziglar* prohibits extending *Bivens* to the First and Fifth Amendment claims he raises in the instant action, and because Plaintiff's Fourth and Six Amendment claims are not cognizable in the instant action.

---

[59] Plaintiff also seeks relief for Defendant's purported violations of BOP policy. However, "Congress has not established a statutory damages remedy specific to violations of BOP policies." *See Islaam v. Kubicki*, 838 F. App'x 657, 661 (3d Cir. 2020). "To allow a damages remedy for violations of BOP policy that do not amount to unconstitutional conduct would exceed the bounds of judicial function." *See id*. (citing *Mack*, 968 F.3d at 317). Plaintiff's claims based upon violations of BOP policy are, therefore, also subject to dismissal.

[60] U.S. Const. amend. VI.

[61] *Grayson v. Mayview State Hosp*., 293 F.3d 103, 114 (3d Cir. 2002).

## V.      CONCLUSION

Based on the foregoing, Defendant's motion to dismiss Bossio's complaint will also be granted. John and Jane Doe Defendants will be dismissed.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge